## Case No. 11,768.
### The RICHARD R. HIGGINS.
[1 Lowell, 290.] [1]

District Court, D. Massachusetts. Nov., 1868

COLLISION—SAILING VESSELS—CHANGING COURSE.

1. A schooner with the wind aft was crossing the course of a schooner close-hauled on the port tack, and undertook to go astern of her; at the same time the close-hauled vessel came about, and a collision ensued. *Held*, that the close-hauled vessel was in fault for not keeping her course.

[Cited in The A. W. Thompson, 39 Fed. 116.]

2. To relieve a vessel from fault in changing her course when the rule requires her to keep it, she must show clearly that it was done after a collision had become inevitable, or at least after a courageous and skilful navigator would have thought it so.

[Cited in The F. W. Gifford. Case No. 5,166.]

The libellant's case was that his schooner, the Emma Bacon, was on a voyage from Philadelphia to Boston, with a full cargo of coal, and between one and two o'clock at night, on the 3d of June, 1867, had arrived at a point about two miles to the northward and eastward of the Pollock Rip light-ship, when a red light was discovered about one and a half points on the starboard bow; that the master and two mates were on deck, besides one or more men forward on the lookout, the first mate being at the wheel. The Emma Bacon was nearly dead before the wind, and the light was discovered at a distance estimated to be from one-half to three-quarters of a mile; the master took his night-glasses, and made out a schooner, which proved to be the Richard R. Higgins, standing in towards the land, close-hauled on the port tack; he ordered the mate to go astern of her, who thereupon put his helm to port, and brought the vessel up about two points, —enough, in the opinion of the witnesses, to clear the other schooner. They presently found that the latter was tacking, and then put their helm hard aport, and brought their vessel round so that her sails shook; but the schooners came together at the bows, and each sustained considerable damage. The evidence for the claimants did not vary this case, excepting as to the time when the several changes of course took place. It tended to show that the master of the Richard R. Higgins was on the lookout, and saw the green light of a vessel about one and one-half points on the port bow, which he rightly interpreted to mean that a vessel was crossing his course. He thought the distance to be from three-quarters of a mile to a mile, and he held his course until he became convinced that there was danger of collision; and then, as the other vessel did not show any signs of changing her course, he gave the order to go about. As his vessel got into the wind, he found that the Emma Bacon had changed her course, and he then hailed

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

her to keep off; but she continued under her port helm notwithstanding, and the collision occurred.

J. C. Dodge, for libellant.

H. W. Paine and R. D. Smith, for claimants.

LOWELL, District Judge. There can be no doubt that it was the duty of the libellant's vessel with the wind aft, to avoid the close-hauled vessel; and that it was equally the duty of the latter to keep her course; and as she did not keep it, the only question is whether there was any thing in the circumstances which justified her departure from the usual rule. When a collision has become inevitable, it is the privilege of the ship which has the right of way to take any measure which may tend to lessen the force of the shock; nay more, it has sometimes been conceded to the infirmity of human nature than when the vessel that has the burden of avoiding the danger has come so near that to a reasonably firm and skilful navigator it appears that the collision is unavoidable, it shall be taken to have been so; and a mistake caused by the rashness of the other party shall not be imputed as a fault to him who has committed it. But this excuse must be made out clearly and satisfactorily, or the rules of navigation will become useless.

This is not such a case. The whole evidence, and indeed the candid statement of the master of the respondents' vessel by itself, tends to show that he did not wait long enough. He appears to have thought that the duty of changing devolved upon the person who first discovered the necessity for a change. It seems altogether probable that the change of course was made by each vessel at about the same time; and that this was in ample season to avoid the danger, if only one had made the change, is shown by the fact that both vessels had come entirely round before they struck; and by the opinion of some of the respondents' witnesses that even after their schooner had come into the wind, it was not too late for the Emma Bacon to have cleared her by starboarding her helm instead of keeping it to port. If they were within hailing distance before the change, that would have been the appropriate time to hail; but probably they were not so, and if not, they moved too soon.

There is another consideration, which, as it involves a point of nautical skill, I do not advance with so much confidence. It appears to me that the most proper course for the Emma Bacon was to go astern of the Higgins, as she undertook to do. If so, the master of the latter vessel in a doubtful case ought to have taken measures, if he took any, to co-operate in that movement, else he might be increasing the danger which he tried to avoid, as proved to be the case here.

For these reasons I hold that the agents of the respondents failed to perform their duty, and there must be a decree for the libellant.